IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| TIMOTHY LEWERS, § § Plaintiff, § § v. § § COMMISSIONER, SSA, § § Defendant. § § § | CIVIL ACTION NO. 6:23-CV-00627-JCB-JDL |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

On December 21, 2023, Plaintiff initiated this civil action pursuant to the Social Security Act, 42 U.S.C. §§ 1383(c)(3) & 405(g) for judicial review of the Social Security Administration ("SSA") Commissioner's denial of Plaintiff's application for social security benefits and supplemental security income benefits. (Doc. No. 1). Pursuant to 28 U.S.C. § 636(b), the case was referred to the undersigned for findings of fact, conclusions of law, and a recommendation for the disposition of the instant action. For the reasons stated below, the court **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED.**

**BACKGROUND**

On June 1, 2021, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI, alleging disability beginning May 21, 2017, due to bi-polar disorder, social anxiety disorder, and attention deficit/hyperactive disorder (Doc. No. 8-6, at 2–27.) Plaintiff's applications were initially denied on February 7, 2022 (Doc. No. 8-5, at 7–16) and again upon reconsideration on August 31, 2022. *Id.* at 20–34. Thereafter, a

hearing was held before Administrative Law Judge ("ALJ") Mark Kim on April 5, 2023. (Doc. No. 8-3, at 30–56.) The ALJ issued a decision on June 26, 2023, finding that Plaintiff is not disabled under the Social Security Act. *Id.* at 11–22. Plaintiff appealed and the Appeals Council denied Plaintiff's request for review. *Id.* at 2–4. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel,* 530 U.S. 103, 106–107 (2000). Plaintiff has filed this civil action for judicial review.

## LEGAL STANDARD

Judicial review of the denial of disability benefits under 42 U.S.C. § 405(g) is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). A finding of no substantial evidence is appropriate only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); SSR 96–5p, 61 Fed. Reg. 34471 (July 2, 1996).

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. App'x 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). However, the court must do more than "rubber stamp" the ALJ's decision; the court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (citations omitted). The court may remand for additional evidence if substantial evidence is lacking. 42 U.S.C. § 405(g).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Commissioner must utilize a five–step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step

3

of the sequential process ends the inquiry. *Id.* At Step One, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant can perform his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 416.920(b)–(g) & 404.1520(b)–(g). The burden of proof is on the claimant for the first four steps; the burden shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (per curiam).

## ALJ AND APPEALS COUNCIL FINDINGS

The ALJ made the following findings in his June 26, 2023 decision:

1. The claimant meets the insured status requirement of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since May 21, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder; social anxiety disorder; and attention-deficit/hyperactivity disorder (ADHD). (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that Claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: Claimant can understand, remember, and carry out simple, routine, unskilled tasks at an SVP of 2 or less, with simple and less than occasional (5% or less of the workday) changes in the work setting. Claimant can have no interaction with the public and can have occasional, superficial contact with coworkers, with no tandem tasks.

6. Claimant is capable of performing past relevant work as a filling machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 21, 2017, through the date of this decision. (20 CFR 404.1520(f) and 416.920(f)).

(Doc. No. 8-3, at 16–22).

The ALJ determined that Plaintiff is not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. *Id.* at 22. The Appeals Council did not grant review of the ALJ's decision, so this became the final decision of the Commissioner. *Id.* at 2–4.

## ANALYSIS

Plaintiff raises two grounds for remand: (1) the ALJ improperly relied on the vocational expert's ("VE") testimony in finding that Plaintiff's RFC allows him to perform past work as a machine operator as defined by the Dictionary of Occupational Titles ("DOT"); and (2) the ALJ failed to properly evaluate Plaintiff's subjective complaints about his symptoms. (Doc. No. 13, at 1.) The Commissioner responds that (1) the ALJ properly relied on the VE's uncontested expert opinion in determining that Plaintiff is not disabled because he can perform past relevant work as a machine operator; and (2) the ALJ fully explained why he found Plaintiff's subjective complaints only partially credible. (Doc. No. 14, at 1.) Because the court recommends reversing and remanding the ALJ's decision regarding the apparent discrepancy between the DOT and Plaintiff's

5

RFC, the court will not address the ALJ's alleged failure to properly consider Plaintiff's subjective statements about his symptoms.

In his first issue, Plaintiff argues that the ALJ's RFC assessment is inconsistent with the VE's determination that Plaintiff is capable of performing past relevant work as a machine operator as stated in the DOT. The ALJ determined Plaintiff's RFC as follows:

> Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: Claimant can understand, remember, and carry out simple, routine, unskilled tasks at an SVP of 2 or less, with simple and less than occasional (5% or less of the workday) changes in the work setting. Claimant can have no interaction with the public and can have occasional, superficial contact with coworkers, with no tandem tasks.

(Doc. No. 8-3, at 18–19.)

After determining Plaintiff's RFC, the ALJ inquired about Plaintiff's ability to perform past relevant work. At the administrative hearing, the ALJ noted that Plaintiff had previously worked as a machine operator at a pill factory. *Id.* at 51. The VE classified this occupation as a filling machine operator (DOT Code No. 920.685-078). *Id.* at 52. The ALJ found the filling machine operator to be past relevant work and then asked the VE if a person with the non-exertional limitations in Plaintiff's RFC could perform this past job. *Id.* at 52–53. The VE responded that a person with Plaintiff's non-exertional limitations could perform the position of filling machine operator. *Id.* at 53. When asked if his analysis was consistent with the DOT, the VE stated in the affirmative. *Id.* at 54.

Plaintiff's counsel then asked the VE whether there would be work for someone who is "unable to tolerate routine work changes in the work setting." *Id.* When asked to clarify what he meant by changes in the work routine, Plaintiff's counsel stated, "any changes that have to be made in the work setting are going to have to be repeatedly reminded to this person by a supervisor. They would be forgetful of any changes to the routine structure provided in the work setting." *Id.*

6

In response, the VE stated, "if they can't do any job that's repetitive and if they're going to have issues and need reminders, based on my experience, they're going to need some type of supportive services. But to answer your question, it would preclude competitive employment." *Id.* at 54–55. When asked whether his testimony was consistent with the DOT, the VE responded that his assessment of the inability to tolerate changes in the work routine is based on his "education, training and experience." *Id.* at 55.

Plaintiff notes that the DOT definition of filling machine operator presumes that there could be changes to the daily work routine, such as malfunctions, adjustments, and repairs.[1] Plaintiff submits that such alterations in the daily work routine are not consistent with Plaintiff's RFC determination of "less than occasional (5% or less of the workday) changes in the work setting." (Doc. No. 13, at 9). As such, Plaintiff argues that under the SSA Policy Interpretation for

---

[1] TITLE(s): PACKAGER, MACHINE (any industry) alternate titles: machine operator, packaging.

Tends machine that performs one or more packaging functions, such as filling, marking, labeling, banding, tying, packing, or wrapping containers: *Starts machine and observes operation to detect malfunctions of machine. Stops machine and reports malfunction to supervisor. Makes minor adjustments or repairs, such as opening valves, changing forming and cutting dies, setting guides, or clearing away damaged product containers.* Inspects filled container to ensure that product is packaged according to specifications. May feed product to conveyors, hoppers, or other feeding devices and unload packaged product. May replenish packaging supplies, such as wrapping paper, plastic sheet, boxes, cartons, glue, ink, or labels. May mount supplies on spindles or place supplies in hopper or other feeding devices. May position and hold container in machine and depress pedal, press button, or move lever to clean, glue, label, sew, or staple container. May cut stencils and stencil information on container, such as lot number or shipping destination. May tally number of units of product packaged or record information, such as size, weight, and type of products packaged. May be designated according to specific function or functions performed by machine tended as Bottle Washer, Machine (any industry) II; Capping-Machine Operator (any industry); Container-Maker-Filler-Packer Operator (any industry); Filling-Machine Operator (any industry); Labeler, Machine (any industry); Wrapping-Machine Operator (any industry). May be designated: Aerosol-Line Operator (any industry); Bag Printer (chemical); Blister-Packing-Machine Tender (any industry); Bread-Wrapping-Machine Feeder (bakery products); Candy-Wrapping-Machine Operator (sugar & conf.); Carton-Gluing-Machine Operator (any industry); Cellophane Wrapper, Machine (any industry); Cover Marker (paint & varnish); Glassine-Machine Tender (any industry); Packing-Machine Tender (any industry); Palletizer Operator (any industry) II; Sack Sewer, Machine (any industry); Silk Screener (optical goods); Spring Crater (furniture); Stencil Cutter, Machine (any industry); Tea-Bag-Machine Tender (food prep., nec); Tire Wrapper (automotive ser.; rubber tire); Tube-Filling Machine Operator (can. & preserv.; chemical); Tying-Machine Operator (any industry); Wrapping-And-Packing-Machine Operator (any industry). Workers who package products by hand are classified under PACKAGER, HAND (any industry) 920.587-018. May act as lead worker.

*Packager, Machine*, INFORMATION TECH. ASSOC. (May 26, 2003), https://occupationalinfo.org/92/920685078.html.

Vocational Experts, SSR 00-4P, 2000 WL 1898704, it was the ALJ's burden to solicit additional testimony from the VE or to otherwise provide a reasonable explanation in his opinion that would resolve the apparent discrepancy. *Id.* at 8–10.

The Commissioner responds that pursuant to the Fifth Circuit's decision in *Carey v. Apfel*, when there is any implied or indirect conflict between the VE's testimony and the DOT, the ALJ may rely on the VE's testimony "provided that the ALJ record reflects an adequate basis for doing so." 230 F.3d 131 (5th Cir. 2000). The Commissioner notes that the VE clarified any discrepancies between the VE's testimony and the DOT when the VE stated that his opinion concerning changes in the work setting were based on his "education, experience, and training." (Doc. No. 14, at 6.) As such, the Commissioner argues that any potential discrepancies have been resolved and the ALJ's opinion should stand. The Commissioner also asserts that under *Carey*, Plaintiff essentially waived this issue by failing to object at the administrative hearing or otherwise develop the adversarial record. *Id.* at 5.

As an initial matter, the court notes that *Carey* was decided two months prior to the promulgation of the SSA Policy Interpretation for Vocational Experts, which states that if there is a conflict between the VE's testimony and the DOT, the ALJ must elicit a "reasonable explanation for the conflict" before relying on the VE and must "resolve the conflict by determining if the explanation given" is a reasonable basis for relying on the VE rather than the DOT. *See* SSR 00-4P, 2000 WL 1898704. Recently, the Fifth Circuit has held that this rule places an "affirmative responsibility" on the ALJ with respect to such conflicts. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (quoting *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)); *accord Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009). As such, Plaintiff did not need to object at the hearing to preserve error.

8

Nonetheless, the court finds that Plaintiff adequately preserved this issue for appeal when Plaintiff's counsel cross-examined the VE about the inability to tolerate changes to the routine work setting.[2]

Regarding any discrepancies that the ALJ needed to resolve, the DOT definition of filling machine operator includes changes to the daily work routine, such as malfunctions, adjustments, and repairs. Plaintiff's RFC determination limits changes to the daily work routine to "less than occasional (5% or less of the workday)." Although the DOT does not directly conflict with the RFC determination, an implied conflict exists if we assume that any of these changes to the daily work routine might extend beyond 5% of the workday (or twenty-four minutes). Accordingly, the ALJ had a responsibility to resolve the apparent conflict pursuant to the SSA Policy Interpretation.

However, no clear explanation for that resolution exists in the ALJ's opinion. The Commissioner and the ALJ both seem to argue that it was sufficient for the ALJ to rely on the VE's "education, experience, and training" in resolving the conflict. *See* Doc. No. 8-3, at 14; Doc. No. 14, at 6. The SSA Policy Interpretation does state that an ALJ may rely on a VE's "experience in job placement or career counseling" in resolving conflicts, but it also assumes that the VE will provide "more specific information about jobs or occupations than the DOT," not just a general statement that their opinion is based on their education, experience, and training. *See* SSR 00-4P, 2000 WL 1898704. Here, no further explanation was elicited from the VE or otherwise provided in the ALJ's opinion. As such, remand is appropriate. *See Yearby v. Comm'r, SSA*, No. 6:21-CV-00503-JDK, 2022 WL 4820460, at *4 (E.D. Tex. Sept. 9, 2022), *report and recommendation adopted*, No. 6:21-CV-00503-JDK, 2022 WL 4693911 (E.D. Tex. Sept. 29, 2022) (holding VE's claim that DOT "descriptions were consistent based on his own experience," without more, was

---

[2] Even the ALJ's opinion acknowledges this colloquy. *See* Doc. No. 8-3, at 14.

insufficient to resolve apparent conflict between VE's testimony and DOT description); *see also See Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) (holding that the modifier "'clearing tables,' without more, was not sufficient to satisfy the question of whether or not the job of a cafeteria attendant requires more than occasional overhead reaching and that the ALJ improperly relied on the testimony of the VE without resolving this apparent conflict."); *Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) ("Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching."); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 93 (2d Cir. 2019) ("But while 'this Court could guess' what the three jobs Heller identified 'require in reality, it [was] the [Commissioner's] duty to elicit an explanation from [Heller] as to whether th[ose] occupations actually require . . . overhead reaching.'").

## CONCLUSION

For all the foregoing reasons, the court **RECOMMENDS** that the ALJ's decision be **REVERSED** and **REMANDED**. Within **14 days** after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in this Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the District Judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected–to factual findings and legal conclusions accepted and adopted by the District Court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on*

*other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 13th day of August, 2024.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE